## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Judge Robert E. Blackburn

Civil Case No. 08-cv-00180-REB-BNB

TOD A. SCHIFFER,

     Plaintiff,

v.

JOHN E. POTTER, Postmaster General, United States Postal Service,

     Defendant.

---

## ORDER CONCERNING MOTION FOR SUMMARY JUDGMENT

---

**Blackburn, J.**

     This matter is before me on the defendant's **Motion for Summary Judgment** [#22][1] filed February 2, 2009.  The plaintiff filed a response [#27], and the defendant filed a reply [#28].  I grant the motion in part, and I deny it in part.

## I.  JURISDICTION

     I have jurisdiction over this case under 28 U.S.C. § 1331 (federal question).

## II.  STANDARD OF REVIEW

     The purpose of a summary judgment motion is to assess whether trial is necessary.  ***White v. York Int'l Corp.***, 45 F.3d 357, 360 (10th Cir. 1995).  FED. R. CIV. P. 56 (c) provides that the court may grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

---

[1]   "[#22]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's electronic case filing and management system (CM/ECF). I use this convention throughout this order.

moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c);  *see*

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Concrete Works, Inc. v.*

*City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir.1994). Summary judgment may

be granted if the court concludes that no "rational trier of fact" could find for the

nonmoving party based on the showing made in the motion and response. *Matsushita*

*Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III.  FACTS

Except as noted, the following facts are undisputed.  At the relevant times, the

plaintiff, Tod Schiffer, was a part time flexible window distribution clerk at the Ordway

post office in Ordway, Colorado.  Schiffer is a paraplegic with a permanent spinal injury,

who is confined to a wheelchair.  At the relevant times, Mary Noble was the Postmaster

at the Ordway post office, and Noble was Schiffer's direct supervisor.

On September 1, 2005, Schiffer submitted a request for two hours of sick leave to

be taken on September 9, 2005.  Schiffer requested this leave because he was

scheduled to attend a demonstration of an advanced mobility wheelchair on September

9, 2005.  On September 8, 2005, Noble approved Schiffer's request for two hours of sick

leave on September 9, 2005.  On September 8, 2005, Schiffer advised Noble that

Schiffer had canceled his appointment to attend the wheelchair demonstration.  The

advanced mobility wheelchair Schiffer wished to see is manufactured by Independence

Technology.  Schiffer says Independence Technology required 48 hours notice for

cancellation of a demonstration.  Schiffer says he cancelled his demonstration

appointment when Noble had not reviewed and acted on his request for sick leave.

Schiffer did not inform Noble of Independence Technology's 48 hour cancellation policy

when he submitted his leave request, and he did not inform her of this policy when he

and Noble spoke about the leave request on Friday, September 2, 2005.  Schiffer claims

also that on July 23, 2007, he submitted a request for time off on July 28, 2007, but the

request was not approved until July 25, 2007.  *Motion for Summary Judgment* [#22],

Exhibit A-6 (Schiffer Affidavit), p. 87, item 27F.

Schiffer was on sick leave in October and November 2006, when two pay checks

issued to him were received at the Ordway post office.  Schiffer did not pick up the

checks, and Noble held the checks at the Ordway post office.  Schiffer says he directed

Noble to mail the checks to Schiffer, but Noble disputes this contention.  On February 17,

2007, Noble realized that she still was in possession of the checks, and she mailed the

checks to Schiffer.

On March 13, 2007, Noble met with Schiffer and requested that Schiffer provide

medical documentation justifying Schiffer's use of sick leave.  Schiffer was not disciplined

at this meeting or as a result of this meeting.

In 2007, Schiffer was scheduled to work from 7:00 a.m., to 12:00 p.m.  Schiffer

was routinely clocking in 10 to 15 minutes early.  According to Noble, on May 10, 2007,

Noble told Schiffer not to clock in or to work before 7:00 a.m.  Schiffer told an EEO

investigator that between May 11, 2007, and August 4, 2007, he was not allowed to clock

In before 7:00 a.m., but he started working at 6:45 a.m. anyway so he could complete his

work in time for the letter carriers.  Schiffer says Noble pressured him to begin work at

6:45 a.m., but not to clock in until 7:00 a.m.

The District Office determines the number of work hours each post office is

allowed to schedule.  The Ordway post office was allocated 2.25 clerk hours per day.

Schiffer's hours on Mondays were reduced from four to two so the Ordway post office

could stay within budget.

3

In 2007, the Postmaster of the Ordway post office was promoted to another position.  Before making a permanent selection for the postmaster position, Jose Perez, the Acting Post Office Operations Manager, decided to assign temporarily a postal employee to a detail as the Officer in Charge of the Ordway post office.  Perez selected Patricia Schalia as the Officer in Charge.  At the time Perez made this selection, Perez had never met Schiffer and had no knowledge of Schiffer's disability or of his prior EEO complaints.

On May 5, 2007, Schiffer filed an official complaint of discrimination with the postal service.  *Motion for Summary Judgment* [#22], Exhibit A-6 (EEO Complaint).  In his EEO Complaint, Schiffer alleged that he had been discriminated against and retaliated against on five occasions: (1) two paychecks were withheld from Schiffer for about five months; (2) on March 13, 2007, Schiffer was given an investigative interview by Noble without cause; (3) Schiffer was not compensated for time that he worked off the clock, and he was pressured or expected to work off the clock; (4) his work hours were cut; and (5) his requests for leave had been denied and / or were not timely approved.  *EEO Complaint*.  Schiffer's EEO Complaint was later amended to include a claim that he was not selected for a position as the Officer-in-Charge at the Ordway post office.  In his complaint in this case, Schiffer alleges that the defendant discriminated against him based on his disability, in violation of 29 U.S.C. § 791, which is a part of the Rehabilitation Act.  In addition, Schiffer alleges that the defendant retaliated against him because he filed EEO complaints.  I analyze the discrimination and retaliation claims separately.

## IV.  DISABILITY DISCRIMINATION

The Rehabilitation Act and the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12102 - 12213, impose identical obligations on employers.  ***Cummings v.***

*Norton*, 393 F.3d 1186, 1190 n. 2 (10th Cir. 2005).  When, as in this case, the plaintiff does not have direct evidence of disability discrimination, the burden-shifting framework established in ***McDonnell Douglas Corp. v. Green*** is applicable.  ***McDonnell Douglas Corp. v. Green***, 411 U.S. 792, 802-04 (1973); ***Cummings v. Norton***, 393 F.3d 1186, 1189 (10th Cir. 2005).  To establish a *prima facie* case of disability discrimination under this framework, Schiffer must show that (1) he is disabled; (2) he was subjected to an adverse employment action; and (3) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. ***Hysten v. Burlington Northern and Santa Fe Ry. Co.***, 296 F.3d 1177, 1181 (10th Cir. 2002).

If the plaintiff establishes a *prima facie* case of discrimination, then the burden shifts to the defendant to offer a legitimate, nondiscriminatory reason for its employment decision.  ***See, e.g., MacKenzie v. City and County of Denver***, 414 F.3d 1266, 1274 (10th Cir. 2005).  If the defendant establishes a legitimate, nondiscriminatory reason for its employment decision, then the burden shifts to the plaintiff to show that the defendant's stated reason is a pretext for discrimination. *Id*.

The defendant does not dispute that Schiffer is disabled and, thus, satisfies the first element of a *prima facie* case.  However, with the exception of Schiffer's claim based on the fact that he was not selected for the Officer in Charge position, the defendant argues that the evidence in the record does not establish any other adverse employment actions affecting Schiffer.  The defendant argues also that Schiffer cannot establish that any of the defendant's stated reasons for its actions were a pretext for discrimination.

A.  Adverse Employment Action

Under law established by the United States Court of Appeals for the Tenth Circuit, the phrase "adverse employment action" is broadly construed and encompasses any

action "*materially* adverse to the employee's job status." ***Hillig v. Rumsfeld***, 381 F.3d 1028, 1033 (10th Cir. 2004) (quoting ***Wells v. Colorado Department of Transportation***, 325 F.3d 1205, 1213 (10th Cir. 2003)) (emphasis in ***Hillig***).  An adverse employment action includes "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." ***Hillig v. Rumsfeld***, 381 F.3d 1028, 1032-33 (10th Cir.2004); ***see also Piercy v. Maketa***, 480 F.3d 1192, 1203 (10th Cir. 2007).  "'(A) mere inconvenience or an alteration of job responsibilities,' is not an adverse employment action." ***Id***., 381 F.3d at 1031 (quoting ***Berry v. Stevinson Chevrolet***, 74 F.3d 980, 986-87 (10th Cir. 1996)).  When determining whether an action constitutes an adverse employment action, courts make a case-by-case analysis, "examining the unique factors relevant to the situation at hand." ***Sanchez v. Denver Pub. Sch.***, 164 F.3d 527, 532 (10th Cir. 1998).

The defendant argues that most of the actions taken by the defendant and cited by Schiffer in support of his discrimination claim do not constitute adverse employment actions and do not satisfy the second element of a *prima facie* case.  I agree that two of the actions cited by Schiffer do not constitute adverse employment actions.  These actions are (1) the investigative interview on March 13, 2007; and (2) Noble's delay in approving Schiffer's leave requests.

The March 13, 2007, investigative interview cannot reasonably be characterized as anything more than an inconvenience.  This meeting did not lead to any adverse consequence of any kind for Schiffer and, thus, cannot be considered to be an adverse employment action.  Schiffer notes that Noble took what Schiffer views as too much time to approve two of Schiffer's leave requests.  The requests at issue are (a) Schiffer's

request for sick leave on September 9, 2005, which request was submitted September 1, 2005, and was approved on September 8, 2005; and (b) Schiffer's request for time off on July 28, 2007, which request was submitted on July 23, 2007, and was approved on July 25, 2007.  Under the circumstances of this case, the brief delays in approving these requests cannot reasonably be considered to be materially adverse to Schiffer's employment status or to be a significant change in his employment benefits.

On the other hand, viewing the evidence in the record in the light most favorable to Schiffer, the other actions cited by Schiffer conceivably could be viewed by a reasonable fact finder as adverse employment actions.  Schiffer claims that he was not paid for time he worked because he was required to work from 6:45 a.m., to 7:00 a.m., but was not permitted to clock in until 7:00 a.m. Although thin, Schiffer's statements in his affidavit, viewed in the light most favorable to Schiffer, can be read to support Schiffer's claim that Noble required or pressured Schiffer to work from 6:45 a.m., to 7:00 a.m. and required Schiffer not to clock in until 7:00 a.m.  *Schiffer Affidavit*, responses to item 27D.[2]  If Schiffer was so pressured, then that pressure and the failure to pay Schiffer for time he worked could be seen as an adverse employment action.

Noble says the delay in delivering two paychecks to Schiffer was a misunderstanding and not an intentional act.  Schiffer says he asked Noble to mail the checks to his home, but she did not do so.  *Schiffer Affidavit*, responses to item 27A.[3]  In

---

[2]  Addressing this specific issue in his response to the motion for summary judgment, Schiffer does not cite any evidence in support of his contention that Noble pressured Schiffer into working off the clock.  *Response* [#27], p. 9.  It is not the court's role to search the record for evidence that might support the contention of a party.  However, in reviewing the Schiffer Affidavit as cited by the defendant, I necessarily encountered Schiffer's statements concerning his claim that Noble pressured Schiffer to work off the clock.

[3]  On this point, Schiffer again does not cite any evidence to support the arguments he makes his response to the Motion for Summary Judgment.  However, the court encountered Schiffer's statement on this point when reviewing the Schiffer Affidavit.

this context, the delayed delivery of the paychecks reasonably could be seen as an adverse employment action.  Similarly, there remain genuine issues of material fact relevant to Schiffer's claim that the reduction of his work hours constitutes an adverse employment action.  Again, the defendant concedes that the fact that Schiffer was not selected for a position as the Officer-in-Charge at the Ordway post office can be viewed as an adverse employment action.

### B.  Inference of Disability Discrimination

The defendant argues that the evidence in the record is not sufficient to support an inference of discrimination concerning the adverse employment actions allegedly suffered by Schiffer.  Schiffer argues that the defendant's prior treatment of Schiffer and the procedural irregularities related to the defendant's treatment of Schiffer are sufficient to support an inference that the alleged adverse employment actions directed at Schiffer were motivated by unlawful disability discrimination.

With regard to Schiffer's claim that he suffered disability discrimination when he was not assigned to be the Officer in Charge of the Ordway post office, I find that the evidence in the record cannot support an inference of discrimination.  Jose Perez, the Acting Post Office Operations Manager, chose the person to fill this position.  At the time he made that decision, Perez had never met Schiffer and had no knowledge of Schiffer's disability or previous EEO activity.  *Motion for Summary Judgment* [#22], Exhibit A-8 (Perez Affidavit).  Schiffer has not cited any contrary evidence, and he has not addressed the argument that discriminatory motive cannot be inferred under these circumstances.  If Perez did not know Schiffer and did not know of Schiffer's disability, then a reasonable fact finder could not infer that Perez's decision was motivated by disability discrimination. The defendant is entitled to judgment as a matter of law on Schiffer's discrimination claim

to the extent that claim is based on the fact that Schiffer was not assigned to be the Officer in Charge of the Ordway post office.

With regard to Schiffer's other claims of disability discrimination, I conclude that there remain genuine issues of material fact relevant to the inference of disability discrimination in this case.

### C.  Legitimate Non-Discriminatory Reasons

The defendant has cited legitimate non-discriminatory reasons for each of the employment actions at issue here, and argues that Schiffer has not come forward with any evidence that shows that these stated reasons are a pretext for discrimination. Viewing each relevant action and the relevant legitimate non-discriminatory reason stated by the defendant, it is clear that Schiffer's evidence of pretext is thin as to certain of the specific reasons cited by the defendant.  However, viewing the evidence as a whole and in the light most favorable to Schiffer, I conclude that there remain genuine issues of material fact on the issue of pretext.

## V.  RETALIATION

To establish a *prima facie* case of retaliation, Schiffer must show that (1) he engaged in protected opposition to discrimination; (2) a reasonable employee would have found the employer's alleged retaliatory action to be materially adverse, meaning that the employer's action might dissuade a reasonable worker from making or supporting a charge of discrimination; and (3) a causal connection exists between the protected activity and the materially adverse action.  *E.E.O.C. v. PVNF, L.L.C.*,  487 F.3d 790, 803 (10th Cir. 2007) (applying Title VII).  If the plaintiff establishes a *prima facie* case of retaliation, and there is no direct evidence of retaliation, then the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973), is applicable.  *Id*.

at 804. Thus, if a plaintiff establishes a *prima facie* case of retaliation, then the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the challenged employment decision.  If defendant meets this burden, then the plaintiff must prove the ultimate fact of retaliation by showing that defendant's proffered reason is pretextual.

For the same reasons that Schiffer's discrimination claim fails to the extent it is based on Perez's decision not to hire Schiffer as the Acting Post Office Operations Manager at the Ordway post office, Schiffer's retaliation claim also fails.  There is no evidence that Perez knew of Schiffer's prior EEO activity and, thus, a reasonable fact finder could not conclude that there is a causal connection between Schiffer's protected EEO activity and Perez's decision to hire someone other than Schiffer.

In the context of the discrimination claim discussed above, I find that there are genuine issues of material fact relating to the remaining aspects of Schiffer's retaliation claim.  Assuming *arguendo* that the plaintiff or the defendants may be entitled to judgment on certain discreet aspects of the retaliation claim, it is not mandatory that I grant partial summary judgment.  **See *Powell v. Radkins***, 506 F.2d 763, 765 (5th Cir.), ***cert. denied***, 423 U.S. 873 (1975) (even when there are no material disputed issues of fact as to some issues or claims, a trial court may deny summary judgment as to portions of the case that are ripe for summary judgment).  Schiffer's claims are similar to each other, the theories of liability are intertwined, and the claims present concatenated issues of fact and law.  Further  piecemeal resolution of the issues raised by the parties will not significantly simplify or extenuate the evidence at trial.

## VI.  EXHAUSTION

In his complaint [#1], Schiffer alleges that Noble scrutinized Schiffer's work more

closely than she scrutinized the work of non-disabled employees.  The defendant notes that the plaintiff did nor raise this issue in either of his EEO complaints.  *Motion for Summary Judgment*, Exhibits A-5, A-6.  Before bringing a claim under the Rehabilitation Act, a federal employee must exhaust the administrative remedies available to him.  ***See, e.g., Belgrave v. Pena***, 254 F.3d 384, 386 (2nd Cir. 2001); 29 U.S.C. § 794a(a)(1). Schiffer does not address this argument in his response to the Motion for Summary Judgment.  The undisputed facts in the record demonstrate that Schiffer did not exhaust his administrative remedies as to this claim.  To the extent Schiffer seeks to pursue a claim based on his allegation that Noble scrutinized Schiffer's work more closely than she scrutinized the work of non-disabled employees, the defendant is entitled to judgment as a matter of law.

The defendant notes also that Schiffer did not claim retaliation in his EEO complaint alleging untimely approval of his leave in September, 2005.  Schiffer does not challenge this contention.  To the extent Schiffer's retaliation claim is based on the alleged untimely approval of his leave in September, 2005, the defendant is entitled to judgment as a matter of law.

## VII.  ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1.  That the defendant's **Motion for Summary Judgment** [#22] filed February 2, 2009, is **GRANTED** to the extent the plaintiff's disability discrimination claim is based on the March 13, 2007, investigative interview, on the defendant's alleged delay in approving the plaintiff's leave requests, or on Jose Perez's decision to hire someone other than Schiffer as the Acting Post Office Operations Manager at the Ordway post office;

2.  That the defendant's **Motion for Summary Judgment** [#22], filed February 2,

2009, is **GRANTED** to the extent the plaintiff's retaliation claim is based on Jose Perez's decision not to hire Schiffer as the Acting Post Office Operations Manager at the Ordway post office, the allegation that the defendant scrutinized Schiffer's work more closely than it scrutinized the work of non-disabled employees, or on the alleged untimely approval of the plaintiff's leave in September, 2005;

3.  That the defendant's **Motion for Summary Judgment** [#22] filed February 2, 2009, is **DENIED** otherwise;

4.  That the remaining disability discrimination claims in this case are Schiffer's disability discrimination claims based on his allegations that he was pressured or required to work from 6:45 to 7:00 a.m., without pay, that the delivery of two of his pay checks was delayed, and that his hours were reduced; and

5.  That the remaining retaliation claims in this case are those alleged by Schiffer, except for Schiffer's retaliation claims based on the untimely approval of his leave or on the fact that he was not selected as the Acting Post Office Operations Manager at the Ordway post office.

Dated April 13, 2009, at Denver, Colorado.

**BY THE COURT:**

Bob Blackburn

Robert E. Blackburn
United States District Judge